ROBERT P. SMITH, Jr., Chief Judge,
dissenting in part.
I would affirm the deputy’s order in its entirety. In my opinion the deputy applied chapter 440 principles consistently with the evidence taken as a whole and in a way responsive to the legitimate needs of this particular claimant. There was considerable medical evidence that claimant’s complaints of disabling pain were either exaggerated or, if wholly genuine, would respond to short term pain treatment that claimant had incentive to believe would be helpful. Thus the award of permanent partial disability benefits, based on a 70 percent loss of wage earning capacity, was designed both to verify claimant’s disability and to declare to him that he could and would respond to brief therapy and return to some gainful occupation. The overriding purpose of chapter 440 being precisely that, I know of no reason why this Court, reviewing the presumptively correct action of a deputy commissioner who was on the scene and sensitive to the unique circumstances of the claim, should quibble over such a detail as the deputy’s prospective assessment that a few sessions at the pain clinic would help both claimant’s back and his will.
What were the alternatives?
To find claimant still temporarily and totally disabled, and to prescribe the same treatment as remedial? That perhaps would have been consistent with a doctor’s *373 testimony that claimant could be considered at maximum medical improvement only if he did not submit to recommended surgery, but such a finding would have offered claimant no inducement to respond to pain treatment and to strive for some working capacity without surgery. Indeed, the deputy obviously considered continued temporary benefits, which were claimed, a clear disincentive to recovery.
Should the deputy have found claimant 70 percent permanently disabled at the time of hearing, based on a permissible evaluation of his loss of wage earning capacity? Such a finding, accompanied by an order for the same palliative pain therapy, would have been verbally neater, but of the same effect as the deputy’s order.
How did this appeal, this cross-appeal, and this judicial labor advance the purposes of chapter 440? The carrier’s appeal, questioning the work search evidence and arguing the effect of medical evidence not accepted by the deputy, resulted in the carrier withholding for the period of this appeal, about eleven months, both the permanent disability payments and the pain treatment. The appeal also produced the cross-appeal, and we by sustaining it place claimant in a position of having little economic incentive to respond to pain treatment belatedly to be gotten. We now place upon the carrier the burden of showing that, through pain treatment and a renewed work search that claimant can make or not as he will, claimant’s wage earning capacity has improved by 30 percent. I rather expect the carrier will not bother to undertake that task.
I view the deputy’s order like so many orders that we similarly remodel, as an attempt to end the litigation with due regard to all competing interests and with reasonable deference to the categorical strictures encrusting chapter 440. The deputy’s acceptance of claimant’s disputed medical testimony rather than the carrier’s, his crediting of claimant’s disputed work search, and his assessment of 70 percent permanent disability at the end of palliative pain treatment, is rather like a sturdy three-legged stool. For a minor internal verbal inconsistency we have removed one leg. So the stool falls over, and claimant, deprived of the healing incentive intended by the deputy, is placed in a practically impregnable condition of compensated total disability. I think our labors here are neither worth the effort nor fulfilling of chapter 440.